Opinion issued August 20, 2020



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00013-CV

_____

**HONEYWELL INTERNATIONAL, INC. AND DEBBIE BRETHOWER, AS REPRESENTATIVE OF THE ESTATE OF MICKEY BRETHOWER,** Appellants

**V.**

**DEBORAH H. DAVIS, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF HUBERT W. DAVIS, JR., AND BERNADINE NEIGHBOR, Appellees**

---

On Appeal from the Probate Court No. 3
Harris County, Texas
Trial Court Case No. 448333-401

---

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellants, Honeywell International, Inc. ("Honeywell") and Debbie Brethower ("Brethower"), as representative of the estate of Mickey Brethower ("Mickey") (collectively, "appellants"), challenge the trial court's denial of their motions to transfer venue filed in the wrongful death and survival suit[2] of appellees, Deborah H. Davis ("Davis"), individually and as independent executrix of the estate of Hubert W. Davis, Jr. ("Hubert"), and Bernadine Neighbor ("Neighbor") (collectively, "appellees"). In their sole issue, appellants contend that the trial court erred in denying their motions to transfer venue of the case from Harris County, Texas to Williamson County, Texas.

We reverse and remand.

## Background

In their second amended petition, Davis, a Harris County resident and the wife of Hubert, and Neighbor, a Williamsburg, Virginia resident and the daughter of Hubert, allege that, in 2016, Hubert, an "expert pilot," worked as "a private flight instructor for student pilots and provided insurance certifications for licensed pilots." Mickey, a licensed pilot who "owned and operated a Rockwell 690B Commander aircraft, Registration No. N690TH" (the "aircraft"), "scheduled and/or contracted" with Hubert "to obtain an insurance certification for single engine out maneuvers

---

[1]     See TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b).

[2]     See id. §§ 71.001–.012, 71.021–.022.

2

required by" the aircraft's insurer. On or about April 9, 2016, at 9:41 a.m., Mickey and Hubert "departed in the . . . [a]ircraft from Georgetown Municipal Airport in Georgetown, Texas."

Appellees further allege that after the aircraft's departure, the aircraft, "within ten (10) minutes of take-off," "climbed to approximately 5,000 feet and slowed to a ground speed of ninety (90) knots," before "disappearing from radar." At 9:51 a.m., the aircraft "departed from [its] controlled flight and crashed into a field in Taylor, Texas." The crash was violent and severe, with Mickey and Hubert dying as a result of the injuries that they sustained in the crash. According to appellees, Mickey was "in sole possession, custody, and control" of the aircraft and he was responsible "for all maintenance, repairs, and servicing for the . . . [a]ircraft."

Appellees brought claims for negligence, gross negligence, and products liability against many defendants, including appellants. As for their negligence claim against Brethower, as representative of the estate of Mickey, appellees asserted that Mickey, a resident of Georgetown, Texas at the time of his death, was negligent in his ownership and operation of the aircraft. More specifically, Mickey and his agents had a duty to exercise ordinary care in the operation, inspection, maintenance, and servicing of the aircraft, and Mickey breached that duty by:

- Failing to take reasonable precautions for Hubert's safety;

- Failing to operate the aircraft reasonably and prudently;

- Failing to do what a reasonable and prudent aircraft owner and service provider would have done under the same or similar circumstances;

- Failing to properly inspect the aircraft;

- Failing to properly service and maintain the aircraft;

- Failing to warn Hubert of the concealed dangers of the aircraft;

- Placing into flight an aircraft that contained dangers that were known, or should have been known, by Mickey;

- Failing to properly test the aircraft and its components to ensure it was fit for its intended and foreseeable use;

- Failing to follow industry-recognized policies and procedures for inspecting, servicing, and maintaining the aircraft;

- Failing to fulfill and honor the representations made about the servicing and maintaining of the aircraft and Hubert's safety; and

- Failing to hire competent and qualified aviation mechanics to inspect, service, and perform maintenance on the aircraft.

According to appellees, the aforementioned acts or omissions by Mickey proximately caused the death of Hubert and appellees' injuries and damages.

As for their negligence and gross negligence claims against Honeywell, appellees asserted that Honeywell was negligent in:

- Failing to adequately inspect, maintain, and service the aircraft and its components to ensure that it would not fail during normal and foreseeable use;

- Installing defective parts on the aircraft;

- Failing to inform Mickey or Hubert of the aircraft's dangers that were known, or should have been known, to Honeywell;

- Placing into service an aircraft containing dangers that were known, or should have been known, to Honeywell; and

- Designing, manufacturing, and installing component parts for the aircraft.

Appellees further allege that the acts or omissions by Honeywell "led to the . . . [a]ircraft's failure" and proximately caused the death of Hubert and appellees' injuries and damages.

Related to their products liability claim against Honeywell, appellees allege that Honeywell "designed, manufactured, sold, and/or marketed [defective] component parts installed on the . . . [a]ircraft" and the "defective component parts[] proximately caused . . . the death of Hubert" and appellees' injuries and damages.

Brethower moved to transfer venue. In her motion to transfer venue, Brethower denied appellees' venue facts and argued that venue was improper in Harris County because "[n]one of the events or omissions giving rise to [appellees' negligence] claim [against Brethower] occurred in Harris County" and Brethower "did not reside in Harris County at the time the cause of action accrued."[3] Instead, Brethower argued that venue was proper in Williamson County because, on April 9, 2016, Mickey and Hubert "departed in the [a]ircraft from Georgetown Municipal

---

[3] *See id.* § 15.002(a).

Airport in Georgetown, Texas," the aircraft "crashed into a field in Taylor, Texas, approximately ten minutes after departure," both Georgetown, Texas and Taylor, Texas are in Williamson County, and Brethower resides in Williamson County.

Honeywell also moved to transfer venue. In its motion, Honeywell denied appellees' venue facts and argued that venue was improper in Harris County because "no substantial part of the events or omissions giving rise to [appellees'] claims occurred in Harris County," none of the defendants resides in Harris County, and Harris County is not the location of any defendant's principal office in Texas.[4] Honeywell asserted that venue was proper in Williamson County because it was "the location of the aircraft [crash] that [was] the subject of [appellees'] lawsuit and one or more defendants [were] located in that county."

In their responses to the motions to transfer venue, appellees argued that venue was proper in Harris County because "a substantial part of the events or omissions giving rise to [their] claims occurred in Harris County." According to appellees, Mickey sought out Hubert, a flight instructor and resident of Harris County, to obtain an insurance certification. Hubert's business, Debut Inc., had its principal place of business in Harris County, and "[a]fter multiple telephone calls and emails to [Hubert]," Mickey contracted with Debut Inc. for Hubert to provide insurance certification. Thus, "[a]ll of the scheduling and negotiation related to [Mickey's]

---

[4]        *See id.*

6

contract with Debut Inc. occurred while [Hubert] was in Harris County" and payment for Hubert's services was made directly to Debut Inc. Because "the totality of the events leading up to [appellees'] claims evidence[d] numerous, strong ties to Harris County," appellees argued that Harris County was a proper venue for their suit. Appellees also asserted that "judicial economy [would] best [be] served in Harris County" because many fact witnesses resided there.[5]

Appellees attached to their responses the affidavit of Davis. In her affidavit, Davis testified that on April 9, 2016, Hubert "died in a violent air[craft] crash." The aircraft was owned and piloted by Mickey, who also died in the crash.

Davis further testified that Mickey sought out Hubert, a Harris County resident, "to obtain an insurance certification." Debut Inc., Hubert's business, with its principal place of business in Harris County, provided flight instruction services and insurance certifications for aircrafts like Mickey's aircraft. Davis explained that "[a]fter multiple telephone calls and emails" to Hubert, Mickey contracted with Debut Inc. The scheduling and contract negotiation with Debut Inc. occurred while Hubert was in Harris County, and payment for Hubert's services was made directly to Debut Inc. Davis then listed six potential "Harris County fact witnesses" that "may be called" to testify in the case.

---

[5]      *See id.* § 15.002(b).

7

In their separate replies to appellees' responses, appellants both asserted that appellees allege claims for negligence, gross negligence, and products liability in their suit arising from the crash of the aircraft, which departed from an airport in Williamson County and crashed in a field also in Williamson County. Thus, "[b]ecause all or a substantial part of the event[s] or omissions giving rise to [appellees'] claims occurred in Williamson County, and [appellees] . . . failed to allege or otherwise come forward with any facts" showing that Harris County was a proper venue, appellees' suit should be transferred to Williamson County. Appellants also explained that, although appellees argued that venue was proper in Harris County because "an alleged contract was formed between Mickey . . . and Hubert" while Hubert was in Harris County, appellees had not brought a claim for breach of contract. Instead, "the causes of action giving rise to th[e] litigation and asserted in [appellees'] petition evolve[d] from the crash of the [a]ircraft, not a contract between parties." Finally, appellants noted that both Brethower and Mickey resided in Williamson County at the time of the aircraft crash and venue is proper in the county where "one or more defendants resided . . . at the time that the cause of action accrued." Thus, because appellees "filed th[eir] lawsuit in an improper venue, and because [appellants] provided evidence that Williamson County[] . . . [was] a proper venue," appellants requested that the trial court transfer the case to Williamson County.

Brethower, in her reply, also objected to the affidavit of Davis, asserting that it was improper, insufficient, conclusory, immaterial, irrelevant, lacked a proper foundation, contained hearsay, and "attempt[ed] to demonstrate the contents of an alleged contract by the use of secondary evidence."[6] Brethower also attached to her reply her affidavit, in which she testified that on April 9, 2016, the aircraft departed from Georgetown Municipal Airport in Georgetown, Texas, the aircraft "crashed into a field in Taylor, Texas," at the time of the aircraft crash she and Mickey resided in Williamson County, and both Georgetown, Texas and Taylor, Texas are in Williamson County. (Internal quotations omitted.)

Later, appellants and appellees filed additional briefing in the trial court related to appellants' motions to transfer venue. In appellees' additional briefing, they argued that venue may be proper in more than one county because a substantial part of the events prompting their causes of action may have occurred in more than one county. Appellees also asserted that it was not required that the specific elements of appellees' claims occur in Harris County and Davis suffered damages in Harris County as a result of Hubert's death. In their additional briefing, appellants both reiterated that, although appellees asserted that Mickey and Hubert engaged in telephone calls in Harris County and that a contract between Mickey and Hubert was

---

[6] At the hearing on appellants' motions to transfer venue, Honeywell joined in Brethower's objections to the affidavit of Davis.

9

formed while Hubert was in Harris County, such communications or contract negotiations were not elements necessary for appellees to prove their negligence, gross negligence, and products liability claims. Brethower also objected to the additional briefing filed by appellees and, again, objected to the affidavit of Davis for the aforementioned reasons.

After a hearing, the trial court, in an interlocutory order, denied appellants' motions to transfer venue. The trial court, in a separate order, also overruled appellants' objections to the affidavit of Davis and Brethower's objection to the additional briefing filed by appellees.

## Jurisdiction

To begin with, appellees assert that we lack appellate jurisdiction to review the trial court's interlocutory order denying appellants' motions to transfer venue. Generally, we lack jurisdiction to review a trial court's interlocutory ruling on a motion to transfer venue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(a) ("No interlocutory appeal shall lie from the [trial court's venue] determination."); TEX. R. CIV. P. 87(6); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *Sustainable Tex. Oyster Res. Mgmt. L.L.C. v. Hannah Reef, Inc.*, 491 S.W.3d 96, 105 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Tex. Windstorm Ins. Ass'n v. Boyle*, No. 01-13-00874-CV, 2014 WL 527574, at *1 (Tex. App.—Houston [1st Dist.] Feb. 6, 2014, no pet.) (mem. op.). But the Legislature has provided that in a

10

suit involving more than one plaintiff, like this case, we have interlocutory appellate jurisdiction to review a trial court's determination of whether "[each] plaintiff did or did not independently establish proper venue." TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a), (b)(1); *Sustainable Tex. Oyster*, 491 S.W.3d at 105–06; *Boyle*, 2014 WL 527574, at *1; *Ramirez v. Collier, Shannon, Scott, PLLC*, 123 S.W.3d 43, 50 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see also Jackson v. Jackson*, No. 02-15-00102-CV, 2016 WL 5220069, at *3 (Tex. App.—Fort Worth Sept. 22, 2016, pet. denied) (mem. op.) ("In a multiple-plaintiff case, every order on a motion to transfer venue will necessarily determine whether each plaintiff did or did not independently establish proper venue."); *Shamoun & Norman, LLP v. Yarto Int'l Grp., LP*, 398 S.W.3d 272, 285–87, 286 n.18 (Tex. App.—Corpus Christi–Edinburg 2012, pet. dism'd) (holding specific language section 15.003 trumps more general language of section 15.064 and "interlocutory appeals are available for venue determinations in any case involving multiple plaintiffs"). We thus conclude that we have jurisdiction over this interlocutory appeal.[7] *See* TEX. CIV. PRAC. & REM.

---

[7] In their briefing, appellants assert that "in the event [that] the Court finds [that] it lacks jurisdiction, this Court should grant mandamus relief to correct the trial court's error" in denying their motions to transfer venue. Because we have concluded that we have jurisdiction over this interlocutory appeal, we dismiss appellants' alternative request for mandamus relief as moot. *See, e.g.*, *In re Canterbury*, No. 2-10-110-CV, 2010 WL 1633425, at *1 (Tex. App.—Fort Worth Apr. 21, 2010, orig. proceeding) (mem. op).

CODE ANN. § 15.003(a), (b)(1); *Sustainable Tex. Oyster*, 491 S.W.3d at 105–06; *Ramirez*, 123 S.W.3d at 50.

**Venue**

In their sole issue, appellants argue that the trial court erred in denying their motions to transfer venue of appellees' suit from Harris County to Williamson County because appellees did not establish that all or a substantial part of the events or omissions giving rise to their claims occurred in Harris County and venue is proper in Williamson County under Texas Civil Practice and Remedies Code section 15.002(a)(1), (2), and (3).

We review the trial court's order denying appellants' motions to transfer venue de novo; we are precluded by statute from considering the trial court's ruling under either an abuse-of-discretion or substantial-evidence standard. TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(c)(1); *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 603 (Tex. 1999); *Boyle*, 2014 WL 527574, at *2; *Ramirez*, 123 S.W.3d at 50.

Plaintiffs have the right to maintain suit in a county of proper venue. *Wilson v. Tex. Parks and Wildlife Dep't*, 886 S.W.2d 259, 262 (Tex. 1994); *Boyle*, 2014 WL 527574, at *2. If the defendants challenge the plaintiffs' venue choice, the plaintiffs have the burden to proffer prima facie proof that venue is maintainable in the county of suit. TEX. R. CIV. P. 87(2)(a), (3)(a); *Boyle*, 2014 WL 527574, at *2; *Chiriboga*

12

*v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.); *see also In re Henry*, 274 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding [mand. denied]) ("Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading."). The plaintiffs' prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993); *Boyle*, 2014 WL 527574, at *2. Other evidence in the record, however, can destroy the plaintiffs' prima facie proof. *Ruiz*, 868 S.W.2d at 757; *Boyle*, 2014 WL 527574, at *2. If the plaintiffs fail to establish proper venue and the defendants have proffered prima facie proof that their specified county is one of proper venue, the trial court must transfer venue to the county specified in the defendants' motion. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999) (orig. proceeding); *Boyle*, 2014 WL 527574, at *2.

Texas Civil Practice and Remedies Code section 15.002(a) provides that all lawsuits shall be brought:

(1)    in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2)    in the county of [the] defendant's residence at the time the cause of action accrued if [the] defendant is a natural person;

(3)    in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

13

(4)     if [s]ubdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a); *see also Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 620–21 (Tex. 2005) (venue in wrongful death and survival actions governed by section 15.002).  To maintain venue under subsection (1), the plaintiffs must show that their basis for venue is a "substantial part" of the claims at issue.  *Boyle*, 2014 WL 527574, at \*2 (internal quotations omitted); *see also Chiriboga*, 96 S.W.3d at 681.  Although, under a predecessor statute, the plaintiffs could maintain venue in a county where any part of a cause of action accrued, "no matter how unimportant the connection might be," the current statute "requires that the basis for venue be a 'substantial part' of the cause[s] of action at issue."  *Chiriboga*, 96 S.W.3d at 681; *see also Highland Cap. Mgmt., L.P. v. Ryder Scott Co.*, 212 S.W.3d 522, 535 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

## A.     Harris County

Appellees argue that venue is proper in Harris County under Texas Civil Practice and Remedies Code section 15.002(a)(1) because "a substantial part of the events or omissions giving rise to [their] claims occurred in Harris County."  More specifically, appellees assert that Mickey "actively sought out [Hubert,] a Harris County flight instructor, initiated contact with [Hubert] in Harris County, and entered into a services contract with a Harris County business," i.e., Hubert's

14

business, Debut Inc. Because Mickey's contract with Debut Inc. was "negotiated entirely while [Hubert] was in Harris County" and "payment for [Hubert's] services was to be made directly to Debut Inc.," "a substantial part of the events giving rise to [appellees'] claims occurred in Harris County." (Emphasis omitted.) Appellees also argue that venue is proper in Harris County because "Hubert and . . . Davis resided in Harris County at the time of [Hubert's] death[] and . . . Harris County was therefore where . . . Davis mourned the loss of her husband and suffered injury as a result" of the aircraft crash. Finally, appellees argue venue is proper in Harris County because "judicial economy [will] best [be] served in Harris County." Because appellants challenged appellees' venue choice, the burden is on appellees to prove that Harris County is a county of proper venue.[8] *See In re Masonite Corp.*, 997 S.W.2d at 197; *Double Diamond-Del., Inc. v. Alfonso*, 487 S.W.3d 265, 271 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.).

In determining whether a county bears a substantial connection to the suit, we must examine the plaintiffs' claims. *Boyle*, 2014 WL 527574, at *2; *Chiriboga*, 96 S.W.3d at 680; *see also Prime Income Asset Mgmt., Inc. v. Marcus & Millichap Real Estate Inv. Servs. of Tex., Inc.*, No. 01-13-00020-CV, 2014 WL 7473801, at *6 (Tex.

---

[8]    Although each plaintiff must independently establish proper venue, appellees assertions that venue is proper in Harris County are identical and we consider them together. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a); *Shamoun & Norman, LLP v. Yarto Int'l Grp., LP*, 398 S.W.3d 272, 288 (Tex. App.—Corpus Christi–Edinburg 2012, pet. dism'd); *see also* TEX. R. APP. P. 47.1.

15

App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.) ("To determine whether a 'substantial part' of the events or omissions giving rise to the claim occurred in [the] . . . [c]ounty, we examine the essential elements of [plaintiff's] cause of action.").

Appellees sued appellants for negligence. Appellees also sued Honeywell for gross negligence and products liability. The elements of a negligence claim are the "existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (internal quotations omitted). To establish a claim of gross negligence, appellees must show two elements: (1) when viewed objectively from the actor's standpoint, the act or omission complained of involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have had actual, subjective awareness of the risk involved, but still proceeded in conscious indifference to the rights, safety, or welfare of others. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014); *Barnes v. United Parcel Serv., Inc.*, 395 S.W.3d 165, 176 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see also Godines v. Precision Drilling Co.*, No. 11-16-00110-CV, 2018 WL 2460302, at *6 (Tex. App.—Eastland May 31, 2018, no pet.) (mem. op.) ("A plaintiff must prove all the elements of negligence as a prerequisite to a gross negligence claim.").

Related to appellees' products liability claim, a product may be unreasonably dangerous because of a defect in marketing, design, or manufacturing. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997). To establish liability based on a design defect, appellees must establish that the product—here, some unspecified "component part[]" installed on the aircraft—was (1) unreasonably dangerous as designed, considering the utility of the product and the risk involved in its use, (2) a safer alternative design was practically available, and (3) the design defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). A manufacturing defect exists if a product does not conform to the design standards and blueprints of the manufacturer, and the flaw makes the product more dangerous and therefore unfit for its intended or reasonably foreseeable uses. *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 881 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) ("A manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous."). And a marketing defect occurs if the defendant knew or should have known of a potential risk of harm presented by a product, but it marketed the product without adequately

17

warning of the danger or providing instructions for safe use. *Benavides*, 189 S.W.3d at 881.

Here, appellees' claims for negligence, gross negligence, and products liability all arise out of the aircraft crash in Williamson County. In their second amended petition,[9] appellees allege that Mickey, a licensed pilot who "owned and operated" the aircraft, "scheduled and/or contracted" with Hubert "to obtain an insurance certification for single engine out maneuvers required by" the aircraft's insurer. On or about April 9, 2016, at 9:41 a.m., Mickey and Hubert "departed in the . . . [a]ircraft from Georgetown Municipal Airport in Georgetown, Texas." After the aircraft's departure, and "within ten (10) minutes of take-off," the aircraft "climbed to approximately 5,000 feet and slowed to a ground speed of ninety (90) knots," before "disappearing from radar." And at 9:51 a.m., the aircraft "departed from [its] controlled flight and crashed into a field in Taylor, Texas." The crash was violent and severe, with Mickey and Hubert dying as a result of the injuries that they sustained in the crash. According to appellees, Mickey was "in sole possession, custody, and control" of the aircraft and he was responsible "for all maintenance, repairs, and servicing for the . . . [a]ircraft."

---

[9] *See Highland Cap. Mgmt., L.P. v. Ryder Scott Co.*, 212 S.W.3d 522, 535–36 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (examining plaintiffs' petition to determine events or omissions that served as basis for suit).

As for their negligence, gross negligence, and products liability claims, appellees assert that Mickey and his agents had a duty to exercise ordinary care in the operation, inspection, maintenance, and servicing of the aircraft, and Mickey breached that duty by:

- Failing to take reasonable precautions for Hubert's safety;

- Failing to operate the aircraft reasonably and prudently;

- Failing to do what a reasonable and prudent aircraft owner and service provider would have done under the same or similar circumstances;

- Failing to properly inspect the aircraft;

- Failing to properly service and maintain the aircraft;

- Failing to warn Hubert of the concealed dangers of the aircraft;

- Placing into flight an aircraft that contained dangers that were known, or should have been known, by Mickey;

- Failing to properly test the aircraft and its components to ensure it was fit for its intended and foreseeable use;

- Failing to follow industry-recognized policies and procedures for inspecting, servicing, and maintaining the aircraft;

- Failing to fulfill and honor the representations made about the servicing and maintaining of the aircraft and Hubert's safety; and

- Failing to hire competent and qualified aviation mechanics to inspect, service, and perform maintenance on the aircraft.

Appellees also allege that Honeywell was negligent in:

- Failing to adequately inspect, maintain, and service the aircraft and its components to ensure that it would not fail during normal and foreseeable use;

19

- Installing defective parts on the aircraft;

- Failing to inform Mickey or Hubert of the aircraft's dangers that were known, or should have been known, to Honeywell;

- Placing into service an aircraft containing dangers that were known, or should have been known, to Honeywell; and

- Designing, manufacturing, and installing component parts for the aircraft.

And such negligent acts "led to the . . . [a]ircraft's failure." Finally, appellees allege that Honeywell "designed, manufactured, sold, and/or marketed [defective] component parts installed on the . . . [a]ircraft" and the "defective component parts[] proximately caused . . . the death of Hubert."

In their second amended petition, appellees do not plead that any event or omission giving rise to their claims occurred in Harris County. *See Christerson v. Speer*, No. 01-16-00469-CV, 2017 WL 1520449, at *4 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, pet. denied) (mem. op.) ("None of the [defendants] is alleged to have committed or performed any act or omission in Harris County relating to the [plaintiffs'] claims."). And appellees, in their petition, do not link any element of their negligence, gross negligence, and products liability claims to Harris County. *See Double Diamond*, 487 S.W.3d at 274–75 (to establish venue proper in particular county, each plaintiff must show link between elements of her causes of action and county); *Boyle*, 2014 WL 527574, at *2–3 (county did not bear substantial connection to plaintiffs' claims where plaintiffs only linked one element of their

20

breach-of-contract claim to that county); *Shamoun*, 398 S.W.3d at 289–90 (plaintiff could not argue that "a substantial part of the events giving rise to his claims" occurred in particular county where, he, in his live petition, "did not allege that any part of the events giving rise to his claims occurred in that county" (internal quotations omitted)); *Moveforfree.com, Inc. v. David Hetrick, Inc.*, 288 S.W.3d 539, 542 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (inquiry is whether substantial connection between plaintiff's claim and chosen county exists); *see also Chiriboga*, 96 S.W.3d at 682 (courts must "look to the nature of the dispute and whether the forum has a 'real relationship' to it when determining whether a particular event was a 'substantial part' of a claim").

Appellees argue that venue is proper in Harris County because Mickey "actively sought out [Hubert,] a Harris County flight instructor, initiated contact with [Hubert] in Harris County, and entered into a services contract with a Harris County business," i.e., Hubert's business, Debut Inc.  In other words, according to appellees, Mickey's contract with Debut Inc. was "negotiated entirely while [Hubert] was in Harris County" and "payment for [Hubert's] services was to be made directly to Debut Inc."  Appellees also assert that "Hubert and . . . Davis resided in Harris County at the time of [Hubert's] death[] and . . . Harris County was therefore where . . . Davis mourned the loss of her husband and suffered injury as a result" of

the aircraft crash. In Davis's affidavit,[10] which appellees attached to their responses to the motions to transfer venue, Davis testified that on April 9, 2016, Hubert "died in a violent air[craft] crash." The aircraft was owned and piloted by Mickey, who also died in the crash. Mickey sought out Hubert, a Harris County resident, "to obtain an insurance certification." Debut Inc., Hubert's business, with its principal place of business in Harris County, provided flight instruction services and insurance certifications for aircrafts like Mickey's aircraft. Davis testified that "[a]fter multiple telephone calls and emails" to Hubert, Mickey contracted with Debut Inc. The scheduling and contract negotiation with Debut Inc. occurred while Hubert was in Harris County, and payment for Hubert's services was made directly to Debut Inc.

Here, appellees have not sued for breach of the contract. *Cf. Duran v. Entrust, Inc.*, No. 01-08-00589-CV, 2010 WL 1241093, at *6–7 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, pet. denied) (mem. op.) ("Contract claims generally accrue in any county where the contract was formed, where it was to be performed or where it was breached." (internal quotations omitted)). Instead, they, in their wrongful

---

[10] We note that appellants, in the trial court, objected to Davis's affidavit, asserting that it was improper, insufficient, conclusory, immaterial, irrelevant, lacked a proper foundation, contained hearsay, and "attempt[ed] to demonstrate the contents of an alleged contract by the use of secondary evidence." The trial court overruled appellants' objections, and on appeal, appellants assert that the trial court erred in overruling their objections and considering Davis's affidavit "in reaching its venue determination." Because of our ultimate disposition in this case, we need not address appellants' argument related to Davis's affidavit. *See* TEX. R. APP. P. 47.1.

22

death and survival suit, have brought claims for negligence, gross negligence, and products liability. Although Mickey, a Williamson County resident, may have contacted Hubert, a Harris County resident, to schedule or contract to use Hubert's services while Hubert was in Harris County and Mickey may have paid Hubert's business for Hubert's services, it cannot be said that this evidence constitutes "prima facie evidence establishing a link between the essential elements of [appellees' claims] and [Harris] County." *Double Diamond*, 487 S.W.3d at 274–75; *see also In re Henry*, 274 S.W.3d at 190 (examining "crux" of plaintiffs' claims to determine where "a substantial part of the omissions serving as the basis for [plaintiffs'] tort claims" occurred in county in which suit was filed); *Chiriboga*, 96 S.W.3d at 680–82 ("Courts look to the nature of the dispute and whether the forum has a 'real relationship' to it when determining whether a particular event was a 'substantial part' of a claim."). And such isolated facts, even if true, do not constitute a "substantial part" of the events giving rise to appellees' tort claims. *See Shamoun*, 398 S.W.3d at 289–90 (ancillary allegation did not "form the primary factual basis for any single claim" of plaintiff); *Chiriboga*, 96 S.W.3d at 681 (question not whether "any part of a cause of action," "no matter how unimportant the connection might be," accrued in county where plaintiff filed suit); *see also Old Am. Cty. Mut. Fire Ins. Co. v. Renfrow*, 90 S.W.3d 810, 819–20 (Tex. App.—Fort Worth 2002) (venue proper in county where accident occurred, not county where contract

23

formed), *overruled on other grounds by* 130 S.W.3d 70 (Tex. 2004). Instead, the bulk of appellees' claims involve acts or omissions not alleged to have occurred in Harris County. *See Shamoun*, 398 S.W.3d at 289–90 (bulk of plaintiff's claims involve actions outside county); *see also Velasco v. Tex. Kenworth Co.*, 144 S.W.3d 632, 634 (Tex. App.—Dallas 2004, pet. denied) (plaintiff's "wrongful death claim arose when his wife died in the [multi-vehicle] accident" in Johnson County); *Ray v. Farris*, 887 S.W.2d 164, 166 (Tex. App.—Texarkana 1994) ("A wrongful death cause of action arises from an injury that causes an individual's death. Until an injured person dies, . . . the [entire] cause of action for wrongful death has not accrued." (internal citations and quotations omitted)), *rev'd on other grounds*, 895 S.W.2d 351 (Tex. 1995).

And in regard to appellees' argument that because "Davis resided in Harris County at the time of [Hubert's] death" and "Davis mourned the loss of her husband and suffered injury as a result" of the aircraft crash while in Harris County, venue is proper in Harris County, appellees do not specify how such facts would establish that venue is proper in Harris County as for Neighbor, a Williamsburg, Virginia resident. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a); *Shamoun*, 398 S.W.3d at 288 (each plaintiff must independently establish proper venue).

We also note that Texas Civil Practice and Remedies Code section 15.002(a)(1) states that venue is proper "in the county in which all or a substantial

part of the events or omissions *giving rise to the [plaintiffs'] claim[s]* occurred."

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1). And although appellees assert that "the suffering of damages is included in the 'events giving rise to the[ir] claim[s]'" and venue is thus proper in Harris County, the cases relied on by appellees do not support their assertion.

Federal courts applying the same language from a federal venue statute[11] have held that venue is not proper in a certain judicial district just because the "damages, expenses [or] effects resulting from . . . [a] wrongful death [were] suffered" by the decedent's family while they were residing in that particular judicial district. *See, e.g.*, *Miller v. City of Columbus*, No. 05-70391, 2005 WL 1028237, at *1 (E.D. Mich. Apr. 26, 2005) (internal quotations omitted) (holding plaintiff did not show that Eastern District of Michigan had substantial connection to claim although plaintiff asserted that "damages, expenses and effects resulting from . . . [a] wrongful death

---

[11]　The federal venue statute provides that an action based on diversity jurisdiction "may be brought in . . . a judicial district in which a *substantial part of the events or omissions giving rise to the claim occurred . . . .*" 28 U.S.C. § 1391(b)(2) (emphasis added); *see also Velasco v. Tex. Kenworth Co.*, 144 S.W.3d 632, 635 (Tex. App.—Dallas 2004, pet. denied) ("Because [Texas Civil Practice and Remedies Code section 15.002(a)(1)] appears to have been patterned after a federal venue statute, we may presume the [L]egislature intended to adopt the construction placed on that wording by the federal courts and look to federal cases to guide our interpretation of the [Texas] statute."); *Summers v. WellTech, Inc.*, 935 S.W.2d 228, 232–33 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("The similar wording in the federal and state statutes allows us to look to federal cases as a guide to interpreting th[e] [state] statute.").

[were] suffered" by the decedent's family there (internal quotations omitted)); *see also Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (rejecting argument venue proper in judicial district where plaintiff resided because he was "injured" in the district where he resided); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) ("[T]he fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district."); *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 458–61 (S.D. Tex. 1996) ("effects" of event, like injuries, not same as "event giving rise to a claim").

These federal decisions fit with a prior Texas Supreme Court decision. In *Gonzalez*, the Texas Supreme Court addressed questions of venue in "a wrongful death, personal injury, or property damage case." 159 S.W.3d at 617. In that case, Guadalupe Gonzalez, Jr., before his death, lived with his wife, Jannete, and their children in Hidalgo County, Texas. *Id.* After Gonzalez was killed in an accident while working at a power plant in Fort Bend County, Texas, Jannete filed a wrongful death and survival suit against the power plant in Hidalgo County probate court. *Id.* Although the power plant moved to transfer venue of the wrongful death and survival action to Harris County where its principal place of business in Texas was located, the Hidalgo County probate court denied the motion. *Id.* After Jannete filed the same wrongful death and survival suit in Harris County district court, she then asked

26

the Hidalgo County probate court to transfer the Harris County case to Hidalgo County and to consolidate her two actions. *Id.* Later, the Hidalgo County probate court granted Jannete's motion to transfer her wrongful death and survival suit out of Harris County district court and into the Hidalgo County probate court. *Id.* at 618.

In addressing whether venue for Jannete's wrongful death and survival action was proper in Hidalgo County, the Supreme Court explained that "[v]enue in [a] wrongful death and survival action[] is governed by section 15.002 of the [Texas] Civil Practice and Remedies Code." *Id.* at 620. And section 15.002 provides that "all lawsuits shall be brought . . . (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred; (2) in the county of [the] defendant's residence at the time the cause of action accrued if [the] defendant is a natural person; [or] (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person." *Id.* at 620–21 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)). Thus, because the accident that caused the death of Gonzalez, Jannete's husband—the impetus for Jannete's wrongful death and survival suit—occurred in Fort Bend County, and the power plant's principal place of business in Texas was in Harris County, Hidalgo County was not the proper venue for Jannete's wrongful death and survival suit. *Id.* at 621–22. In other words, the court concluded that Hidalgo County was not a proper venue for the plaintiff's wrongful death and survival suit, even though she and the decedent resided there at

27

the time of the decedent's death. *Id.*; *see also Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 283 (E.D.N.Y. 2001) (in wrongful death suit, "a substantial part of the events giving rise to the claims occurred" in district where airplane crashed); *Velasco*, 144 S.W.3d at 634–35 (in wrongful death action, venue proper in county where decedent died in multi-vehicle accident; court did not consider where plaintiff lived or grieved); *In re Berry GP, Inc.*, 530 S.W.3d 201, 205–06 (Tex. App.—Beaumont 2016, orig. proceeding) ("Under Texas law, venue of suit is proper in the county where the accident occurred."); *Union Pac. R.R.. v. Stouffer*, 420 S.W.3d 233, 245 (Tex. App.—Dallas 2013, pet. dism'd) (in wrongful death suit, venue was proper in county where accident occurred and where defendant maintained its principal office in Texas); *Reliant Energy, Inc. v. Gonzalez*, 102 S.W.3d 868, 874 (Tex. App.—Houston [1st Dist.] 2003) (in wrongful death action, venue only proper in county where decedent was killed in power plant accident or in county where power plant's principal place of business was located), *aff'd*, 159 S.W.3d 615 (Tex. 2005).

Finally, appellees assert that "judicial economy [will] best [be] served in Harris County, where a significant number of fact witnesses reside." Texas Civil Practice and Remedies Code section 15.002(b) provides that "[f]or the convenience of the parties and witnesses and in the interest of justice, a court may transfer an action from a county of proper venue . . . to any other county of proper venue on

28

motion of a defendant filed and served concurrently with or before the filing of [its] answer" provided that the trial court makes certain findings. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(b). Appellees have mistakenly relied on section 15.002(b) to support their assertion that venue is proper in Harris County.

Section 15.002(b) only authorizes a transfer of venue for convenience upon a defendant's motion. *See id.*; *Chiriboga*, 96 S.W.3d at 683. Here, appellants did not move to transfer venue to Williamson County based on section 15.002(b). As plaintiffs in this suit, appellees cannot use section 15.002(b) to attempt to maintain venue in Harris County or to assert that venue is proper in Harris County because "judicial economy is best served in Harris County." *See Chiriboga*, 96 S.W.3d at 683 ("The purpose of section 15.002(b) is to change venue, not to serve as a basis to maintain venue in the first instance. It certainly cannot be a basis for a plaintiff to maintain an action in a county of improper venue.").

In sum, appellees have not put forth prima facie evidence that venue was proper in Harris County under Texas Civil Practice and Remedies Code section 15.002(a)(1), and so we conclude that venue is not maintainable in Harris County. *See Double Diamond*, 487 S.W.3d at 275–76. Based on this conclusion, we must determine whether appellants put forth prima facie evidence that Williamson County is a county of proper venue. *See id.* at. 276.

## B. Williamson County

If the plaintiffs fail to discharge their burden of proof on venue, the burden of proof shifts to the defendants to prove that venue is proper in their chosen county. *See In re Masonite Corp.*, 997 S.W.2d at 197; *Stouffer*, 420 S.W.3d at 245. Appellants argue that venue is proper in Williamson County because "all or a substantial part of the events or omissions giving rise to [appellees'] claims occurred there," Mickey "resided there at the time [appellees' claims] accrued," and the principal place of business for another defendant, Corsair Turbines, LLC, is in Williamson County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1), (2), and (3).

As stated previously, Texas Civil Practice and Remedies Code section 15.002(a) provides that venue for an action is proper (1) "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred"; (2) "in the county of [the] defendant's residence at the time the cause of action accrued if [the] defendant is a natural person"; and (3) "in the county of the defendant's principal office in this state, if the defendant is not a natural person." *Id.*; *see also Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001) (cause of action accrues "when facts have come into existence that authorize a claimant to seek a judicial remedy"). Here, it is undisputed that Mickey and Hubert departed from Georgetown Municipal Airport, in Williamson County, in the aircraft and

crashed into a field also in Williamson County. At the time of his death, Mickey resided in Williamson County.[12] *See West v. Taylor*, No. 04-04-00119-CV, 2004 WL 2715396, at *2 (Tex. App.—San Antonio Dec. 1, 2004, no pet.) (mem. op.) (venue facts undisputed; venue proper in county where accident prompting suit occurred and because decedent resided in same county at time of accident; cause of action accrued at time of decedent's death). Appellees themselves pleaded, in their second amended petition, that defendant Corsair Turbines, LLC's principal place of business was in Williamson County. *See Tieuel v. S. Pac. Transp. Co.*, 654 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1983, no writ) (plaintiff generally bound by its pleadings); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 15.005; *Stouffer*, 420 S.W.3d at 245 (if venue proper as for at least one defendant, then venue proper as to all defendants in all claims arising out of same transaction).

For these reasons, we conclude that appellants put forth prima facie evidence that Williamson County is a county of proper venue under Texas Civil Practice and Remedies Code section 15.002(a). We thus hold that the trial court erred in denying appellants' motions to transfer venue to Williamson County.

We sustain appellants' sole issue.

---

[12]    Brethower's affidavit testimony also supports these venue facts.

## Conclusion

We reverse the trial court's order denying appellants' motions to transfer venue and remand this case to the trial court with instructions to transfer the case to Williamson County.

Julie Countiss
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.